Douglas B. Adler (SBN 130749)
Douglas.Adler@Skadden.com
Jason D. Russell (SBN 169219)
Jason.Russell@Skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
 FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California  90071-3144
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

*Attorneys for Defendant Paul G. Allen*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLIFFORD JAMES SMITH,<br><br>                    Plaintiff,<br><br>           v.<br><br>CHARTER COMMUNICATIONS, INC. (ST. LOUIS), PAUL G. ALLEN,<br><br>                    Defendants. | CASE NO. CV 09-03716 RGK (AGRx)<br>Hon. Judge R. Gary Klausner<br><br>(1) NOTICE OF MOTION AND MOTION OF DEFENDANT PAUL G. ALLEN TO DISMISS THE COMPLAINT;<br><br>(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;<br><br>(3) PROPOSED ORDER GRANTING MOTION TO DISMISS (lodged under separate cover);<br><br>(4) REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (filed under separate cover).<br><br>Date:         April 19, 2010<br>Time:         9:00 a.m.<br>Location:   Courtroom 850<br>                   Roybal Federal Building |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, upon the Memorandum of Points and Authorities in Support of Defendant Paul G. Allen's Motion to Dismiss the Complaint, Defendant Paul G. Allen will move this court for an order dismissing the Complaint with prejudice as to Mr. Allen pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), and pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b).

This notice of motion is exempt from the conference of counsel certification requirement of Local Rule 7-3, pursuant to Local Rule 16-12(c) (cases in which plaintiff appears <u>pro se</u>).

Dated:  February 23, 2010

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 /s/  *Douglas B. Adler*

Douglas B. Adler (SBN 130749)
Douglas.Adler@Skadden.com
Jason D. Russell (SBN 169219)
Jason.Russell@Skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California  90071-3144
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

*Attorneys for Defendant Paul G. Allen*

1

2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ........................................................................1

Statement of Facts ...........................................................................2

ARGUMENT....................................................................................2

    I.      PLAINTIFF'S CLAIMS ARE BARRED BY THE THIRD-
          PARTY RELEASES IN THE PLAN OF REORGANIZATION ........2

    II.     PLAINTIFF'S SECURITIES LAW CLAIMS SHOULD BE
          DISMISSED ON THE INDEPENDENT GROUND THAT
          THEY FAIL TO STATE A CLAIM FOR RELIEF ..........................6

          A.    The Complaint Fails To Satisfy The Particularity
                Requirements of the PSLRA and Rule 9(b)..............................6

          B.    Claims For Breach of Fiduciary Duty Are Not Cognizable
                Under Federal Securities Law ..............................................12

          C.    The Complaint Fails To State Any Claim Under The
                Securities Act of 1933 ........................................................14

CONCLUSION ...............................................................................15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

## CASES                                                        Page(s)

3

Aaron v. Yang,
   No. C-08-05438 (RMW),
4   2009 WL 1689707, at *4-*8 (N.D. Cal. June 15, 2009) ................................. 2-3

5

Ashcroft v. Iqbal,
   ___ U.S. ___, ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...........................7
6

Bell Atlantic Corp. v. Twombly,
7    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................7

8

In re Charter Communications, Inc.,
   419 B.R. 221 (Bankr. S.D.N.Y. 2009)................................................................1
9

In re Countrywide Financial Corp. Securities Litigation,
10   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...........................................10, 12-13, 15

11

Davis v. Chase Bank U.S.A., N.A.,
   650 F. Supp. 2d 1073 (C.D. Cal. 2009) ......................................................... 7-8
12

Dura Pharmaceuticals, Inc. v. Broudo,
13   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ........................... 9-10

14

Grand Lodge v. Peters,
   550 F. Supp. 2d 1363 (M.D. Fla. 2008)............................................................15
15

Heritage Hotel Partnership I v. Valley Bank of Nevada (In re Heritage
16      Hotel Partnership I),
   160 B.R. 374 (B.A.P. 9th Cir. 1993),
17   aff'd, 59 F.3d 175 (9th Cir. 1995) ....................................................................5

18

Hertzberg v. Dignity Partners, Inc.,
   191 F.3d 1076 (9th Cir. 1999)..........................................................................15
19

Hudson v. Lancaster State Prison,
20      No. 05-cv-8397 (SJO) (FFM),
   2009 WL 4730872, at *6-*7 (C.D. Cal. Dec. 4, 2009) .......................................2
21

In re Impac Mortgage Holdings, Inc. Securities Litigation,
22   554 F. Supp. 2d 1083 (C.D. Cal. 2008) .....................................................10, 13

23

In re Levi Strauss & Co. Securities Litigation,
   527 F. Supp. 2d 965 (N.D. Cal. 2007)..............................................................15
24

McIntosh v. Pierce,
25   75 F. App'x 833 (2d Cir. 2003)........................................................................12

26

Metzler Investment GMBH v. Corinthian Colleges, Inc.,
   540 F.3d 1049 (9th Cir. 2008)...................................................................... 9-10
27

Miller v. Thane International, Inc.,
28   519 F.3d 879 (9th Cir.),
   cert. denied, 129 S. Ct. 161 (2008)..................................................................14

1  Mullis v. United States Bankr. Ct.,
       828 F.2d 1385 (9th Cir. 1987)............................................................2
2
   Rubke v. Capitol Bankcorp Ltd,
3      551 F.3d 1156 (9th Cir. 2009)....................................................14, 15
4  Santa Fe Industries, Inc. v. Green,
       430 U.S. 462, 97 S. Ct. 1292, 51 L. Ed. 2d 480 (1977) ....................12
5
   Sawyer v. Zabel,
6      No. 09-CV-00870 (LAP),
       2009 WL 4334607 (S.D.N.Y. Dec. 1, 2009) ......................................2
7
   In re Stac Electronics Securities Litigation,
8      89 F.3d 1399 (9th Cir. 1996)......................................................9, 11
9  Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.,
       298 F.3d 1137 (9th Cir. 2002).....................................................4-5
10
   United States v. Sequel Contractors, Inc.,
11     402 F. Supp. 2d 1142 (C.D. Cal. 2005) ...............................................7
12 Zucco Partners, LLC v. Digimarc Corp.,
       552 F.3d 981 (9th Cir. 2009)....................................................6, 7
13

14 **STATUTES**                                                          **Page(s)**

15 11 U.S.C. § 101(5)........................................................................3

16 11 U.S.C. § 101(15)......................................................................4

17 11 U.S.C. § 1141(a) ....................................................................5

18 15 U.S.C. § 77k(a) ....................................................................14

19 15 U.S.C. § 77*l*(a)(2) ..................................................................14

20 15 U.S.C. § 78j(b).......................................................................6

21 15 U.S.C. § 78u-4(b)...................................................................1

22 15 U.S.C. § 78u-4(b)(1) ..............................................................8

23 15 U.S.C. § 78u-4(b)(3)(A)..........................................................7

24 17 C.F.R. § 240.10b-5 (2009) ......................................................6

25 Fed. R. Civ. P. 8(a) ..................................................................14

26 Fed. R. Civ. P. 9(b) ................................................................1, 7

27 Fed. R. Civ. P. 12(b)(6)..............................................................1

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Paul G. Allen ("Mr. Allen") respectfully submits this Memorandum of Law in support of his Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).  For the reasons set forth below, in addition to those set forth in the Memorandum of Law filed by Charter Communications, Inc. ("Charter") in support of its Motion to Dismiss the Complaint, dated February 23, 2010, which Mr. Allen joins in full, the Court should grant Mr. Allen's Motion to Dismiss the Complaint and dismiss this action with prejudice as to Mr. Allen.

## PRELIMINARY STATEMENT

Plaintiff's claims are barred by the Third-Party Release included in the Plan of Reorganization (the "Plan") (see Declaration of Douglas B. Adler in Support of Defendant Paul G. Allen's Request for Judicial Notice, dated Feb. 23, 2010 ("Adler Decl."), Ex. 1),[1] confirmed by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), effective as of November 30, 2009. See In re Charter Communications, Inc., 419 B.R. 221 (Bankr. S.D.N.Y. 2009). Subsequent to confirming the Plan, the Bankruptcy Court, based on the Third-Party Release in the Plan, enjoined certain other Charter stockholders from proceeding with a federal securities law class action lawsuit against Mr. Allen, among others, in the United States District Court for the Eastern District of Arkansas.  (See Adler Decl. Ex. 3 (hereinafter "2/8/10 Bankruptcy Order").)  For the reasons set forth by Bankruptcy Judge James M. Peck in the 2/8/10 Bankruptcy Order, the Third-Party Release in the Plan bars the claims brought by Mr. Smith in this action.  Even if the Third-Party Release did not bar such claims, for the reasons discussed below, they

---

[1]      Defendant Paul G. Allen's Request for Judicial Notice is filed under separate cover.

1  should be dismissed with prejudice because they fail to meet the pleading
2  requirements of a federal securities law claim.

3

4                          **STATEMENT OF FACTS**

5          Mr. Allen respectfully refers the Court to Charter's Memorandum of Law in

6  Support of its Motion to Dismiss the Complaint for a background and summary of

7  the relevant facts relating to the Plan and Third-Party Release.

8

9                               **ARGUMENT**

10 **I.    PLAINTIFF'S CLAIMS ARE BARRED BY THE THIRD-PARTY
          RELEASES IN THE PLAN OF REORGANIZATION**

11         Plaintiff's claims against Mr. Allen are explicitly barred by Third-Party

12 Releases contained in Charter's Plan and should, for that reason alone, be dismissed

13 with prejudice.  The Bankruptcy Court recently held that certain federal securities

14 claims concerning Mr. Allen's prepetition conduct on behalf of Charter, filed against

15 Mr. Allen by various former equity holders in a separate litigation, were expressly

16 barred by the broad releases set forth in the Plan.  (See 2/8/10 Bankruptcy Order at

17 10 ("The Plan expressly contemplated the release of the named defendants, Paul G.

18 Allen, Eloise Schmitz and Neil Smit.").)  As set forth in Mr. Allen's Request for

19 Judicial Notice filed under separate cover, this Court should take judicial notice of

20 the Plan, which includes the Third-Party Release, and dismiss the case on the basis

21 of that release.  See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir.

22 1987) ("[F]acts subject to judicial notice may be considered on a motion to

23 dismiss."); Sawyer v. Zabel, No. 09-CV-00870 (LAP), 2009 WL 4334607, at *1 n.2,

24 *2-4 (S.D.N.Y. Dec. 1, 2009) (relying upon judicially noticed release of claims in

25 granting Rule 12(b)(6) motion to dismiss).[2]

26
_____

27      [2]      See also Hudson v. Lancaster State Prison, No. 05-cv-8397 (SJO)
   (FFM), 2009 WL 4730872, at *6-*7 (C.D. Cal. Dec. 4, 2009) (granting motion to
28 dismiss certain claims of pro se plaintiff on basis of releases); Aaron v. Yang, No. C-

                                                                        *(cont'd)*

As the Bankruptcy Court observed, the Third-Party Releases unambiguously released any and all claims brought against Mr. Allen under the federal securities laws having anything to do with Charter, brought by any current or former equity holder of Charter.  The Third-Party Releases provide, in relevant part:

> Third Party Releases. . . . [T]he Holders of Claims and Interests shall be deemed to provide a full discharge and release to the Debtor Releasees and their respective property from any and all Causes of Action, whether for tort, contract, violations of federal or state securities law, or otherwise, arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 Cases or the Plan.

Plan § X.E (emphases added).[3]  Plaintiff is plainly a "Holder[] of Claims and Interests," as that term includes all current and former equity holders, such as Plaintiff, and those having any claim against Charter, as Plaintiff did in this action during the entirety of the Bankruptcy Proceeding.  See Plan §§ I.A.114; I.A.119 (defining "Interest" as including equity interest);[4] I.A.64 (defining "Claim" as synonymous with definition in Section 101(5) of the Bankruptcy Code; 11 U.S.C. § 101(5) ("claim" includes rights to payment which have not been reduced to judgment).  Mr. Allen is unambiguously a "Debtor Releasee[]," as that term includes all the directors of Charter, see Plan Introduction; Plan § X.D, and Mr. Allen was chairman of the board.  (See Compl. at 2.)  And Plaintiff's federal securities claims are unquestionably "related" directly to Charter, in that they complain of various business decisions allegedly made by Mr. Allen on behalf of Charter just prior to Charter's bankruptcy, just as the claims barred by the Bankruptcy Court also

_____

(cont'd from previous page)
08-05438 (RMW), 2009 WL 1689707, at *4-*8 (N.D. Cal. June 15, 2009) (granting motion to dismiss federal securities claims on basis of release).

[3]     The Plan is also appended to the Memorandum of Law in Support of Charter's Motion to Dismiss.

[4]     (See also 2/8/10 Bankruptcy Order at 12 ("The releases thus extend to claims held by . . . any other present or former holders of Charter securities, regardless of the claimant's knowledge, assertion, or prosecution of any such claims.") (emphasis added).)

3

1  complained of Mr. Allen's prepetition conduct on behalf of Charter.  (See Adler Decl.

2  Ex. 2 (copy of the class action complaint filed in separate action).)[5]  Therefore, this

3  action is squarely covered by the Third-Party Releases.  (See, e.g., 2/8/10

4  Bankruptcy Order at 11-12 ("The complaint . . . relates to prepetition conduct of the

5  defendants [including Mr. Allen] acting on behalf of Charter that allegedly caused

6  harm to holders of Charter's publicly traded equity securities. . . . The releases in the

7  Plan are broad. . . .  The causes of action in the complaint are squarely within the

8  scope of this language.").)

9        Claims such as Plaintiff's that are covered by the Third-Party Releases must

10  be discontinued.  As the confirmed Plan provides: "From and after the Effective Date,

11  all Entities are permanently enjoined from commencing or continuing in any manner,

12  any Cause of Action released or to be released pursuant to the Plan or the

13  Confirmation Order."  Plan § X.F (emphasis added); see also Plan § I.A.91 (referring

14  to definition of "Entity" in Section 101(15) of the Bankruptcy Code); 11 U.S.C. §

15  101(15) ("entity" includes any "person").  Accordingly, this action must be

16  dismissed.

17        To the extent Plaintiff seeks an exemption from the Third-Party Releases set

18  forth in the Plan, he is barred from doing so under the principles of res judicata, as

19  there was ample opportunity to litigate the issue of the Third-Party Releases before

20  the Bankruptcy Court.  Indeed, objections to the Third-Party Releases were raised by

21  the United States Securities and Exchange Commission (see Adler Decl. Ex. 4

22  (Objection of the U.S. Securities and Exchange Commission at 4-9)), the United

23  States Trustee (see Adler Decl. Ex. 5 (Objection of the United States Trustee at 5-

24  14)), and two equity holders: $R^2$ Investments (see Adler Decl. Ex. 6 (Excerpts of

25

26        [5]      Pursuant to Mr. Allen's Request for Judicial Notice filed under separate
27  cover, Mr. Allen respectfully requests that the Court take judicial notice of all
    Exhibits to the Declaration of Douglas B. Adler filed in support of Mr. Allen's
28  Request for Judicial Notice cited herein, and rely on such documents in granting Mr.
    Allen's Motion to Dismiss.

Post-Trial Brief of R[2] Investments at 29-33)) and Key Colony (see Adler Decl. Ex. 7 (Excerpt of Post-Trial Brief of Key Colony at 4-11)), in the course of the 19-day confirmation hearing before the Bankruptcy Court.  Such arguments were rejected, and Plaintiff cannot now relitigate the same issue after the fact.

Even if objections to the Third-Party Releases had not been raised, the Third-Party Releases, which are part of a confirmed plan, have res judicata effect.  As the Ninth Circuit has explained, "'Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect . . . .'"  Stratosphere Litig. L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1143 (9th Cir. 2002) (quoting Trulis v. Barton, 107 F.3d 685, 691 (9th Cir. 1995)).  Moreover, 11 U.S.C. § 1141(a) essentially codifies this principle, providing broadly and explicitly, in relevant part, that "the provisions of a confirmed plan bind . . . any creditor [or] equity security holder . . . whether or not the claim or interest of such . . . creditor [or] equity security holder . . . is impaired under the plan and whether or not such . . . creditor [or] equity security holder . . . has accepted the plan."  11 U.S.C. § 1141(a) (emphasis added); see Heritage Hotel P'ship I v. Valley Bank of Nev. (In re Heritage Hotel P'ship I), 160 B.R. 374, 377 (B.A.P. 9th Cir. 1993) ("Section 1141(a) provides that all parties to a confirmed plan are bound by its terms . . . ."), aff'd, 59 F.3d 175 (9th Cir. 1995); id. at 376 n.4 ("Parties . . . subject to the res judicata effect of a Chapter 11 plan include creditors, equity holders, principals of the debtor and parties in privity or successors in interest." (emphasis added)).

Plaintiff alleges that he was an equity holder of Charter stock at least since the fall of 2007 (see Compl. at 1), and he brought his claims in this case in May 2009, months before the Plan was confirmed.  (See id. at 16 (Complaint filed May 26, 2009).)  A mandatory stay, of which Plaintiff had ample notice, was issued shortly thereafter in light of the bankruptcy proceedings.  (See Docket Entry No. 6.) Plaintiff could have objected to the terms of the Plan, including the Third-Party

1   Releases, but failed to do so.  (<u>Cf.</u> 2/8/10 Bankruptcy Order at 6 ("The Class Action

2   Plaintiffs . . . had a difficult time explaining why they ignored the Charter

3   bankruptcy cases until after confirmation.").)

4        As a result, and pursuant to <u>res judicata</u> and 11 U.S.C. § 1141(a), the

5   confirmed plan is binding on Plaintiff's claims, and the express terms of the Third-

6   Party Releases found in the Plan should be applied to preclude Plaintiff's claims.

7   "To rule otherwise would eviscerate the releases and contort their meaning."  (2/8/10

8   Bankruptcy Order at 12.)

9

10  **II.    PLAINTIFF'S SECURITIES LAW CLAIMS SHOULD
        BE DISMISSED ON THE INDEPENDENT GROUND**
11      **THAT THEY FAIL TO STATE A CLAIM FOR RELIEF**

12      **A.    The Complaint Fails To Satisfy The Particularity
            Requirements of the PSLRA and Rule 9(b)**
13

14       The only cause of action explicitly identified in the Complaint is Section 10(b)

15  of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  <u>See</u>

16  15 U.S.C. § 78j(b) (it is "unlawful for any person . . . to use or employ . . . any

17  manipulative or deceptive device or contrivance"); 17 C.F.R. § 240.10b-5 (2009)

18  (prohibiting any "artifice to defraud" or any act "which operates or would operate as

19  a fraud or deceit.").  The elements of a Section 10(b) claim include: "'(1) a material

20  misrepresentation or omission of fact, (2) scienter, (3) a connection with the

21  purchase or sale of a security, (4) transaction and loss causation, and (5) economic

22  loss.'"  <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 990 (9th Cir. 2009)

23  (citation omitted).

24       Even if this Court were to reach the merits of Plaintiff's claims, which it

25  should not do under the Third-Party Releases, Plaintiff's claims should be dismissed

26  because the Complaint fails to satisfy the heightened pleading requirements for

27  Section 10(b) claims.  "At the pleading stage, a complaint stating claims under

28  section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal

    Rule of Civil Procedure 9(b) and the PSLRA."  <u>Zucco Partners</u>, 552 F.3d at 990.

1    In asserting a claim under Section 10(b) of the Securities Exchange Act of
2    1934, the complaint is subject to the PSLRA's heightened pleading requirements.
3    The PSLRA requires Plaintiff to "'specify each statement alleged to have been
4    misleading, the reason or reasons why the statement is misleading, and, if an
5    allegation regarding the statement or omission is made on information and belief, . . .
6    state with particularity all facts on which that belief is formed.'" Zucco Partners,
7    552 F.3d at 990-91 (alteration in original) (quoting 15 U.S.C. § 78u-4(b)(1), quoted
8    in Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002)).  To adequately plead
9    scienter, the complaint must "'state with particularity facts giving rise to a strong
10   inference that the defendant acted with the required state of mind.'"  Zucco, 552 F.3d
11   at 991 (quoting 15 U.S.C. § 78u-4(b)(2)).  The PSLRA requires dismissal of
12   complaints that do not meet these pleading requirements.  See 15 U.S.C. § 78u-
13   4(b)(3)(A) ("court shall, on the motion of any defendant, dismiss the complaint if the
14   requirements of paragraphs (1) and (2) are not met").  An inference of scienter is
15   "strong" only if a reasonable person would deem it to be "'cogent and at least as
16   compelling as any opposing inference one could draw from the facts alleged.'"
17   Zucco, 552 F.3d at 991 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551
18   U.S. 308, 324, 127 S. Ct. 2499, 2510, 168 L. Ed. 2d 179, 194 (2007)).

19       In addition, Rule 9(b) of the Federal Rules of Civil Procedure requires that
20   Plaintiff "state with particularity the circumstances constituting fraud or mistake."
21   Fed. R. Civ. P. 9(b).  Allegations of fraud must "'state the time, place, and specific
22   content of the false representations as well as the identities of the parties to the
23   misrepresentation.'"  United States v. Sequel Contractors, Inc., 402 F. Supp. 2d 1142,
24   1152 (C.D. Cal. 2005) (Klausner, J.) (quoting Schreiber Distrib. Co. v. Serv-Well
25   Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  The plaintiff must "set forth
26   what is false or misleading about a statement, why it is false, including the 'who,
27   what, when, where and how of the misconduct charged.'"  Davis v. Chase Bank
28

7

1  U.S.A., N.A., 650 F. Supp. 2d 1073, 1090 (C.D. Cal. 2009) (quoting Vess v. Ciba

2  Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

3          To the extent that the above heightened pleading standards do not apply,

4  which in any case they do, the complaint must plead enough facts "to state a claim to

5  relief that is plausible on its face." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct.

6  1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (internal quotation marks omitted)

7  (citation omitted); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955,

8  1974, 167 L. Ed. 2d 929, 949 (2007).  Thus, "[f]actual allegations must be enough to

9  raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

10          None of the Complaint's vague references to fraudulent intent is supported by

11  any particularized facts, nor is there any cogent articulation as to what statements

12  were misleading and why.  Under "Complaint 1," there is no particularized factual

13  basis to support the conclusory allegation that Charter's declaration of bankruptcy

14  was "deliberately carried out by Charter Communications, Mr[.] Allen and a subset

15  of the Board to enhance their own private positions at the expense of the Class A

16  common share holder."  (Compl. at 3.)  Plaintiff's conclusory speculations about

17  Charter's solvency prior to the bankruptcy filing also do not satisfy any standard of

18  particularity, nor does mere disagreement with Mr. Allen's business decisions suffice

19  to raise a strong inference of scienter.  "Complaint 1" also fails to identify any

20  statement by Mr. Allen "alleged to have been misleading," much less any "reason or

21  reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).

22          The remainder of "Complaint 1" (see Compl. at 4-11) consists of rambling

23  speculation, unsupported by any particularized facts, to the effect that Mr. Allen at

24  one point thought about letting the Rights Agreement expire to Charter's alleged

25  detriment.  See 15 U.S.C. § 78u-4(b)(1) ("[I]f an allegation regarding the statement

26  or omission is made on information and belief, . . . [the pleading must] state with

27  particularity all facts on which that belief is formed.").  Yet, even in extolling the

28  virtues of the Rights Agreement at length (see Compl. at 5-9), Plaintiff admits at the

1  end of the day that the Rights Agreement was, in fact, <u>renewed</u>.  (<u>See</u> <u>id.</u> at 5-6.)

2  Therefore, Plaintiff's allegations that Mr. Allen could benefit himself by letting the

3  Rights Agreement expire are entirely moot.  The only statement alleged to have been

4  misleading is Charter's December 23, 2008, SEC filing which, Plaintiff alleges, was

5  misleading because it failed to describe "the haste with which the Rights Agreement

6  renewal actually was taken."  (<u>Id.</u> at 7.)  As a threshold matter, there are no

7  allegations that would attribute that particular statement to Mr. Allen, who was an

8  outside director and was therefore uninvolved in the day-to-day operations of the

9  company.  <u>See</u> <u>In re Stac Elecs. Sec. Litig.</u>, 89 F.3d 1399, 1411 (9th Cir. 1996)

10 ("[B]ecause the roles of the underwriter, outside director, and venture capital

11 defendants in propounding the allegedly fraudulent statements are left unspecified, it

12 follows that Plaintiffs have not met the specificity requirements of Rule 9(b).").

13 There is also no particularized allegation whatsoever suggesting, plausibly or

14 otherwise, why it mattered that the Board decided to renew the Rights Agreement

15 quickly, especially since it was ultimately renewed before the deadline of December

16 31.  Plaintiff's reference to the Federal Stimulus package in 2009 also lacks any

17 particularized connection with Mr. Allen's state of mind at any point in time, his

18 statements or omissions, or explanations as to why any of Mr. Allen's statements or

19 omissions were misleading.  Vague references to statements posted on the Yahoo

20 message board by Plaintiff and others also do not support a strong inference of

21 scienter nor do they provide a basis for asserting falsity.  The "who, what, when,

22 where and how of the misconduct charged," are all utterly lacking.

23        Nor does Plaintiff adequately allege how or why the omission about how

24 quickly Charter arrived at the decision to renew on December 23 <u>caused</u> Plaintiff

25 loss.  Loss causation is the "causal connection between the [defendant's] material

26 misrepresentation and the [plaintiff's] loss."  <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S.

27 336, 342, 125 S. Ct. 1627, 1631, 161 L. Ed. 2d 577, 585 (2005).  The securities laws

28 are intended "not to provide investors with broad insurance against market losses,

1  but to protect them against those economic losses <u>that misrepresentations actually</u>

2  <u>cause</u>." <u>Id.</u> at 345 (emphasis added).  The Supreme Court therefore held that loss

3  causation requires allegations that a company's "share price fell significantly <u>after</u>

4  <u>the truth became known</u>." <u>Id.</u> at 347 (emphasis added); <u>see also</u> <u>Metzler Inv. GMBH</u>

5  <u>v. Corinthian Colls., Inc.</u>, 540 F.3d 1049, 1062 (9th Cir. 2008).  ("A complaint fails

6  to allege loss causation if it does not 'provide[] [a defendant] with notice of what the

7  relevant economic loss might be or of what the causal connection might be between

8  that loss and the misrepresentation[.]'  Stated in the affirmative, the complaint must

9  allege that the defendant's "share price fell significantly after the truth became

10  known." (alterations in original) (citations omitted)); <u>In re Countrywide Fin. Corp.</u>

11  <u>Sec. Litig.</u>, 588 F. Supp. 2d 1132, 1200 (C.D. Cal. 2008) (to allege loss causation

12  based on a drop in stock value, plaintiff "must allege a mispricing caused by the

13  securities violation, followed by a subsequent price correction caused when the

14  market appreciated (or began to appreciate) the truth.  Otherwise, the alleged

15  violations cannot have proximately caused whatever loss the plaintiff suffered."

16  (citation omitted) (citing <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1056-57 (9th

17  Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 1193 (2009)).

18          Plaintiff attempts to suggest causation by asserting that

19          the Class A Common shares, which have been reduced to
           very low prices, would have come back dramatically.  Why?

20          Because 60million+ shares were reportedly being shorted –
           all of which would be forced to purchase shares at the same

21          time.  This would have easily driven the share price levels
           higher than $3 dollars.  Instead my loss was my $1,334,000

22          equity investment.

23  (Compl. at 4.)  Plaintiff's allegations, however, fails to plausibly plead causation, and

24  certainly does not satisfy the more rigorous standards of the PSLRA and Rule 9(b),

25  as they are based on rank speculation that allegedly shorted shares would have been

26  repurchased "at the same time" by multiple parties.  No facts are alleged to support

27  such speculation or to support Plaintiff's guess as to how Charter's stock price might

28

1  perform in the future based on the behavior of the unspecified group that allegedly

2  shorted Charter's stock.

3         "Complaint 2" alleges that Charter issued several filings over the years

4  containing statements that falsely assured the public that Charter would succeed and

5  not go bankrupt.  (See Compl. at 13 ("I inferred from the positive statements that

6  there would be actions taken to make the corporation a viable entity, not, as it was, in

7  the end, subject to bankruptcy with no timely corrective actions taken.").)  Yet

8  Plaintiff fails to identify any statement that actually says or even implies what

9  Plaintiff "inferred."[6]  The first allegedly misleading statement provided that "Mr.

10 Allen . . . may . . . pursue or propose recapitalization or other possible restructuring

11 transactions . . . or other extraordinary corporate transactions, such as mergers or

12 reorganization or sales of material assets."  (Id. at 12 (emphasis added).)  The second

13 statement identified similarly provided, "Mr. Allen is further considering possible

14 restructuring transactions designed to reduce the Issuer's leverage."  (Id. (emphasis

15 added).)  As a threshold matter, there are no particularized allegations that Mr. Allen

16 himself even made or participated in crafting these statements which were issued by

17 Charter.  See In re Stac Elecs. Sec. Litig., 89 F.3d at 1411.  As to the content of the

18 statements themselves, nowhere is it alleged that Mr. Allen did not actually consider

19 these various restructuring options, nor are there any particularized allegations giving

20 rise to a strong inference that Mr. Allen sought to deceive the public with these

21 statements.  There are also no particularized allegations explaining Mr. Allen's role

22 in such restructuring decisions or any other circumstances that would have had an

23 impact on the viability of these options.  As such, the Complaint fails to explain why

24

25

_____

26      [6]      Even if Plaintiff actually alleged that Mr. Allen specifically stated that
   Charter would become a viable entity, which Plaintiff does not, such a statement
27 would not be actionable.  See In re Impac Mortgage Holdings, Inc. Sec. Litig., 554 F.
   Supp. 2d 1083, 1097 (C.D. Cal. 2008) ("[V]ague, optimistic statements . . . may not
28 be actionable as material misrepresentations.").

1  these statements were misleading and, accordingly, "Complaint 2" fails to state a

2  claim under the requisite pleading standards.

3          Lastly, as to "Complaint 3," Plaintiff simply decries Charter's decision to lend

4  shares to bondholders.  Nowhere is there any allegation of fraud or deceit, much less

5  any particularized factual allegations in support thereof.  There is no identification of

6  any material misstatement or omission by Mr. Allen.  There is no indication that

7  Plaintiff did not know about this business decision or was misled in anyway.

8  "Complaint 3" should be accordingly dismissed.

9          Pro se pleadings are not exempt from the requirements of the PSLRA, or from

10 Rule 9(b).  See McIntosh v. Pierce, 75 F. App'x 833, 834 (2d Cir. 2003) ("Given the

11 requirements of the PSLRA, and the deficiencies in [the] complaint, even our liberal

12 approach to pro se pleadings will not assist him.").  Because the Complaint fails

13 utterly to satisfy the heightened pleading standards of the PSLRA and Rule 9(b), the

14 Complaint must be dismissed with prejudice as to Mr. Allen.

15

16     **B.     Claims For Breach of Fiduciary Duty**
17            **Are Not Cognizable Under Federal Securities Law**

18         Plaintiff's Section 10(b) claim should be dismissed for the additional reason

19 Plaintiff cannot invoke the federal securities laws to assert claims that are essentially

20 mismanagement claims premised on alleged breaches of fiduciary duty.

21         As its language and the case law make clear, the core of a Section 10(b) claim

22 is fraud.  See Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 473, 97 S. Ct. 1292, 1301,

23 51 L. Ed. 2d 480, 492 (1977) ("The language of § 10(b) gives no indication that

24 Congress meant to prohibit any conduct not involving manipulation or deception.").

25 Claims that are merely premised on alleged breaches of fiduciary duty cannot be

26 asserted as Section 10(b) claims.  See id. at 476 ("a breach of fiduciary duty by

27 majority stockholders, without any deception, misrepresentation, or nondisclosure" is

28 not actionable under Section 10(b)); In re Countrywide Fin. Corp. Sec. Litig., 588 F.

Supp. 2d at 1144 ("[T]he federal securities laws deal with false or misleading

12

1  statements in connection with investments.  The federal securities laws do not create

2  liability for poor business judgment or failed operations." (citing Santa Fe, 430 U.S.

3  at 479)).

4          The claims set forth in the Complaint are, at their core, breach of fiduciary

5  duty claims expressing Plaintiff's dissatisfaction with the business decisions made by

6  Charter leading up to its bankruptcy. The cover sheet of the Complaint adequately

7  captures this fact, as it is entitled, "Failure to Perform Fiduciary Responsibilities

8  Arising from Conflict of Interest / Recklessness."

9          The theme of alleged mismanagement, as opposed to fraud and deceit,

10 permeates the Complaint.  "Complaint 1," entitled, in relevant part, "Gross Failure to

11 Perform Fiduciary Responsibilities" (Compl. at 2), alleges that "Mr. Paul Allen . . .

12 failed grossly to perform [his] fiduciary responsibilities to the common share

13 holders."  (Id.)  One alleged "failure of fiduciary responsibility" included Charter's

14 decision to declare bankruptcy.  (See id. at 3.)  Plaintiff also alleges that Mr. Allen

15 failed to "perform his fiduciary obligations to the Class A common share holders" (id.

16 at 4), when Charter did not renew the Rights Agreement as early as Plaintiff would

17 have liked.  (See id. at 4-11.)  "Complaint 2" complains of "unreasonable conduct

18 from the standards of ordinary care of a corporation" (id. at 11) due to Charter's

19 statements about possible recapitalization.  (See id. at 11-15.)  Lastly, "Complaint 3"

20 charges Charter with lending shares to bondholders, which, as Plaintiff alleges, "flies

21 in the face of the concept of fiduciary responsibility."  (Id. at 16.)  To the extent the

22 Complaint plausibly identifies Mr. Allen as the cause for all these decisions (and it

23 does not, see supra), mere disagreement with Mr. Allen's business decisions does not

24 blossom into a full-blown Section 10(b) claim of deceitful behavior.  See In re Impac

25 Mortgage Holdings, Inc. Sec. Litig., 554 F. Supp. 2d 1083, 1095 (C.D. Cal. 2008)

26 ("'Congress by § 10(b) did not seek to regulate transactions which constitute no

27 more than internal corporate mismanagement.'" (quoting Santa Fe, 430 U.S. at 479)).

28

1   Because Plaintiff's essentially asserts claims for breach of fiduciary duty

2   masquerading as Section 10(b) claims, they should be dismissed with prejudice

3   pursuant to the dictates of <u>Santa Fe</u>.

4   **C.   The Complaint Fails To State Any**
    **Claim Under The Securities Act of 1933**

5   As already indicated, the only cause of action identified in the Complaint is

6   Section 10(b) of the Securities Exchange Act of 1934.  The Complaint does cite the

7   Securities Act of 1933 ("1933 Act") (<u>see</u> Compl. at 2 ("<u>Governing Substantive Law:</u>

8   <u>Securities Acts 1933 and 1934</u>")), but fails to identify any actual provision of the

9   1933 Act anywhere in the Complaint.  <u>See</u> Fed. R. Civ. P. 8(a) ("A pleading that

10  states a claim for relief must contain . . . a short and plain statement of the claim

11  showing that the pleader is entitled to relief . . . .").  For that reason alone, to the

12  extent the Complaint could possibly be construed as asserting any claim under the

13  1933 Act, such claims must be dismissed.

14  Even if the Court were to construe the Complaint as asserting claims pursuant

15  to Sections 11(a) or 12(a)(2) of the 1933 Act, 15 U.S.C. § 77k(a); 15 U.S.C.

16  § 77*l*(a)(2), such claims should be dismissed because nowhere does Plaintiff identify

17  an actual registration statement, prospectus, or oral communication.  <u>See</u> <u>Rubke v.</u>

18  <u>Capitol Bankcorp Ltd</u>, 551 F.3d 1156, 1161 (9th Cir. 2009) ("Section 11 of the

19  Securities Act contains a private right of action for purchasers of a security if the

20  issuer publishes a registration statement in connection with that security that

21  'contain[s] an untrue statement of a material fact . . . .'" (first alteration in original)

22  (citation omitted)); <u>Miller v. Thane Int'l, Inc.</u>, 519 F.3d 879, 885 (9th Cir.) ("[T]o

23  prevail under Section 12(a)(2), a plaintiff must demonstrate (1) an offer or sale of a

24  security, (2) by the use of a means or instrumentality of interstate commerce, (3) by

25  means of a prospectus or oral communication, (4) that includes an untrue statement

26  of material fact . . . ."), <u>cert. denied</u>, 129 S. Ct. 161, 172 L. Ed. 2d 43 (2008).  The

27  Complaint also fails to contain any allegations plausibly indicating why any

28

14

1  statements identified in the Complaint were misleading, for the reasons already

2  stated.

3          Nor does the Complaint contain any allegations plausibly indicating how the

4  specific securities purchased by Plaintiff are traceable to the misleading registration

5  statement in question, or that Plaintiff purchased his securities pursuant to a public

6  offering.  See Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076, 1081 (9th Cir.

7  1999) (under Section 12, the "plaintiff must have purchased the security directly

8  from the issuer of the prospectus"); In re Countrywide Fin. Corp. Sec. Litig., 588 F.

9  Supp. 2d at 1164; (Section 11 requires showing that the securities in question were

10  traceable to a defective registration statement); Grand Lodge v. Peters, 550 F. Supp.

11  2d 1363, 1374-76 (M.D. Fla. 2008) (dismissing Section 11 claim where complaint

12  contained the "'wholly conclusory'" allegations that plaintiffs "'purchased shares . . .

13  traceable to the Company's SPO'" and that plaintiffs purchased shares "'issued

14  pursuant to or traceable to'" the public offering (citations omitted)); In re Levi

15  Strauss & Co. Sec. Litig., 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007) (Section

16  12(a)(2) claim requires showing that securities in question were purchased pursuant

17  to a public offering).  Lastly, to the extent the Complaint "sounds in fraud," none of

18  the allegations satisfy the particularity requirements of Rule 9(b), for the reasons

19  already discussed.  See, e.g., Rubke, 551 F.3d at 1161 (Rule 9(b) applies to Section

20  11 claim if it sounds in fraud).

21          Accordingly, to the extent the Complaint asserts any claim under Section 11 or

22  12(a)(2) of the 1933 Act, such claims must be dismissed with prejudice.

23

24                                          **CONCLUSION**

25

          For the foregoing reasons, in addition to the reasons stated by Charter in its

26  ///

27  ///

28

                                                    15

1  Memorandum of Law in Support of its Motion to Dismiss the Complaint, Mr. Allen

2  respectfully requests that the Court Dismiss the Complaint with prejudice.

3

4  Dated:  February 23, 2010

5                                         Respectfully submitted,

6                                         SKADDEN, ARPS, SLATE, MEAGHER &
                                             FLOM LLP
7
                                           /s/  Douglas B. Adler
8  _____

9                                         Douglas B. Adler (SBN 130749)
                                          Douglas.Adler@Skadden.com
10                                        Jason D. Russell (SBN 169219)
                                          Jason.Russell@Skadden.com
11                                        SKADDEN, ARPS, SLATE, MEAGHER &
                                             FLOM LLP
12                                        300 South Grand Avenue, Suite 3400
13                                        Los Angeles, California  90071-3144
                                          Telephone: (213) 687-5000
14                                        Facsimile:  (213) 687-5600

15
                                          *Attorneys for Defendant Paul G. Allen*
16

17

18

19

20

21

22

23

24

25

26

27

28